Steven L. AMDUR, Plaintiff-Appellant,

v.

CITY OF CHICAGO, a municipal corporation, Defendant-Appellee,

Karle Meyer and North Dearborn Association, Applicants for Intervention.

No. 80–1682.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1980.

Decided Dec. 5, 1980.*

Opinion Jan. 23, 1981.

Rule 35. The panel has decided to issue the decision as an opinion.

Jonathan L. Mills, Chicago, Ill., for plaintiff-appellant.

Regan Ebert, Corp. Counsel, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

PER CURIAM.

This is an action challenging a Chicago zoning ordinance to limit growth in certain areas of the city by "downzoning," or reducing the size of buildings that may be constructed on certain parcels of land. The plaintiff, Steven Amdur, owns one such property in an area commonly known as the "near north side." He alleges that the zoning ordinance violates the Fifth and Fourteenth Amendments to the United States Constitution (and analogous provisions of the Illinois Constitution) and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* The district court ruled that the constitutional claims were immaterial and made solely for purposes of obtaining federal jurisdiction and dismissed the complaint. We affirm, but on grounds different from those relied on by the district court.

■ We believe that the district court had subject matter jurisdiction over the action. We further hold, however, that the complaint failed to state a constitutional claim under the recent Supreme Court decision in *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). In that case, the Court held that there was no Fifth or Fourteenth Amendment violation under a remarkably similar fact situation. The City Council of Tiburon, California had passed a zoning ordinance to limit the amount of growth in the city by restricting the number of housing units that could be built per acre within the city. Appellants alleged that because they could no longer develop their five-acre tract as extensively as they had planned, the actions of the City Council amounted to an unconstitutional taking for public purposes without compensation. As in this case, appellants had not yet filed an application for a building permit, so the only question—and the only question here—was whether the mere enactment of the zoning ordinances constituted a taking. The Court held that they did not. "Although the ordinances limit development, they neither prevent the best use of appellants' land, *see United States v. Causby*, 328 U.S. 256, 262, and n. 7, 66 S.Ct. 1062, 1066 n. 7, 90 L.Ed. 1206 (1946), nor extinguish a fundamental attribute of ownership, *see Kaiser Aetna v. United States*, 444 U.S. 164 at 179–180, 100 S.Ct. 383 at 392–393, 62 L.Ed.2d 332." 100 S.Ct. at 2142. The Court noted that the appellants would be permitted to build as many as five houses on their five acres of residential property. Similarly, in this case Amdur may still build on his property. He simply may not construct as large a high-rise as he had planned. Under the holding in *Agins*, therefore, the allegations in plaintiff's complaint fail to state a Fifth Amendment claim.

■ Plaintiff attempts to distinguish the *Agins* decision. He claims that the Tiburon ordinance affected all property owners in

the relevant area equally, while the Chicago ordinance "downzoned" only certain parcels of land.[1] The Chicago ordinance, however, affects areas of the city that are already highly developed. The City of Chicago could not very well "downzone" land on which high-rises had already been constructed. The zoning ordinances in dispute here limit construction on every parcel not already developed beyond the limits in the new ordinance. The city could do no more than that.[2] There is no substantive distinction between this case and *Agins*. Plaintiff's complaint fails to state a constitutional claim.[3]

We affirm.

1. Plaintiff makes this distinction the basis of an equal protection claim as well. For the reasons discussed herein, we find this claim to be without merit.

2. While theoretically the city could have included the land where high-rises now stand—and left them as existing non-conforming uses—in view of the probable permanence of the existing high-rises, it is irrelevant to plaintiff's claim whether that land was included in the restricted zone.

3. Plaintiff contends that the merits of his constitutional claim are *res judicata*, as they were decided in an action in the Circuit Court of Cook County two weeks after *Agins*. *Harris Trust and Savings Bank v. City of Chicago*, No. 79–L–23380 (June 24, 1980). We find the reasoning in *Agins* more compelling. Plaintiff also alleges that the zoning ordinances violate the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* He is not a member of the group that is allegedly the subject of discrimination, and he therefore lacks standing to raise such a claim. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).